IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ENTERED
AUG 0 9 2004

VERONICA PRECIOUS COLEMAN, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 00-PWG-1669-M
 )
GADSDEN PROGRESS COUNCIL, ET AL., )
 )
    Defendants. )

## MEMORANDUM OF OPINION

Veronica Precious Coleman, plaintiff, filed this action against defendants Gadsden Progress Council–J.W. Steward Headstart Child Development Center (Headstart) and Kathryn Barrett (Barrett) alleging breach of an employment agreement and trespass and conversion of plaintiff's retirement funds. This action was removed from state court to federal court as an ERISA action. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This matter is before the court for consideration of defendants' motion for summary judgment. (Doc. #26). Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477

U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the non-moving party. Headstart, is a non-profit agency organized, in part, for the purpose of providing child-care, development and education for children enrolled in their program. (Barrett depo., p.22). Headstart also serves the local community by providing job opportunities, training and education to its employees. (Barrett depo., p.22).

Barrett was employed by Headstart as program director during the relevant period. She was responsible for oversight of all operations and programs. (Barrett depo., p.14). Ms. Coleman was employed during the school year at Headstart from October of 1991 through at least May of 1998 as a teacher's assistant. (Exhibit A, complaint, p.2; Barrett depo., p.24). Headstart is funded year to year.

(Barrett depo., p.52). During the summer months Ms. Coleman, like all other employees, would apply for and receive unemployment compensation. Headstart, however, continued to fund the employees' health insurance. (Barrett depo., p.53). Ms. Coleman testified in deposition that she did not understand that when the school year ended in the spring of one year that teachers were rehired on an as-needed basis for the fall sessions. (Coleman depo., p.38). Notice of being recalled to work was usually sent to the employees in August after the Headstart program had received notice of funding for the upcoming year. The notices were sent before the start of the school year. (Barrett depo., p.52).

A part of Ms. Coleman's duties included riding the bus with the children at the end of the school day to ensure that each child got off at the proper stop and that each child was in the care of a parent or other responsible adult who would assume responsibility for the child. (Coleman depo., p.39). On April 21, 1998 Ms. Coleman allowed a child to exit the bus without being received by a parent or other responsible adult. (Coleman depo., p.40). The child was then returned to the Headstart office by the parent of another child. (Barrett depo., p.28). Ms. Coleman acknowledged that she allowed the child to exit the bus without a parent present and accepted responsibility for her actions. (Coleman depo., p.40). Ms. Coleman was suspended pending an investigation. Plaintiff continued to receive a pay check throughout April and May although she did not return to work. (Barrett depo., p.52). The investigation was completed near the end of the school year. (Barrett depo., p.39).

Ms. Coleman was not notified or recalled for the subsequent school year. (Coleman depo., p.29). When plaintiff was not recalled, Ms. Coleman's counsel mailed the letter of August 24, 1998 requesting clarification of her employment status. (Plaintiff's Exhibit A). The letter advises Barrett that if Ms. Coleman had been terminated it did not appear that the termination was accomplished in the manner

prescribed by the policies and procedures manual. (Plaintiff's Exhibit A.) Ms. Barrett admitted to receiving this letter but never responded to it. (Barrett depo., pp.48-51, 53-56).

Ms. Barrett did, however, meet with Ms. Coleman on or about September 11, 1998.[1] At the meeting Ms. Barrett offered the plaintiff an opportunity to resign her position as teacher-assistant at the agency "in an effort to prevent undesirable consequences." She gave the plaintiff until September 25, 1998 to respond in writing. (Barrett depo., pp.44,45,54; plaintiff's Exhibit C). Ms. Barrett told Ms. Coleman in the September 11, 1998 meeting that "I should have fired you a long time ago and that I could have fired you at the end of the year." (Plaintiff's Exhibit C., p.2). Ms. Coleman was told that "because of the safety offense that has been meted toward a child coupled with her (Precious) employment record–her(Precious) employment could not be reinstated." (Plaintiff's Exhibit C, Barrett depo., p.54). Ms. Coleman did not accept the defendants' September 1998 offer to resign her position. (Barrett depo., p.54). Despite the clarity of the topic and substance of the September 11 meeting, Ms. Coleman was never expressly informed that her employment had been terminated. (Coleman depo., pp.53,54; Barrett depo., pp.53-56).

The defendants' Policies and Procedures Manual provides a schedule of disciplinary measures and progressive discipline. The manual provided "summary suspension" for certain serious infractions by employees, and "disciplinary suspensions" for certain violations. A detailed procedure for an

---

[1] Plaintiff makes much of the fact that the September 11, 1998 meeting was the first meeting between herself and Ms. Barrett since her suspension. (Plaintiff's brief, p.3). Ms. Barrett, however, sent letters on June 18, 1998, July 15, 1998 and August 31, 1998 to Ms. Coleman requesting a conference with her to discuss "the status of her employment." The June and July letters were returned to Ms. Barrett. (Barrett depo., p.42). Ms. Coleman moved a week or two after the bus incident. (Coleman depo., p.49). She did not give anyone at Headstart her new address, but she had her mail forwarded to her new address. (Coleman depo., p.49).

appeal of adverse personnel actions and for filing grievances is set out in the personnel policies. (Plaintiff's Exhibit E, Tab C). The Policies and Procedures Manual provides:

> F. <u>Disciplinary Suspension</u> - A disciplinary suspension is used to make an employee aware of the severity of his/her unsatisfactory conduct, and to communicate to him/her that the program will not continue to tolerate his/her deficiencies.
>
> The Head Start Director may initiate a disciplinary suspension against an employee to correct conduct which is in conflict with the standards of conduct as defined in the agency's personnel policies and procedures.
>
> Disciplinary suspension is without pay. Leave benefits are not affected.
>
> The employee must be notified in writing of the specific reason for the suspension, the length of the suspension, and the right to appeal the disciplinary suspension under the agency's appeal procedure.
>
> G. <u>Summary Suspension</u> - A summary suspension is imposed by the Head Start Director if the employee's continued presence in the program endangers the safety of staff or children, endangers property, or otherwise disrupts the operation of the program.
>
> A summary suspension usually leads to a termination. The summary suspension must immediately be followed by a letter confirming the summary suspension, stating the reason for the suspension, notifying the employee of the intent to terminate in accordance with the involuntary termination procedure, and notifying the employee of his/her appeal rights.
>
> The summary suspension is without pay and, in cases of subsequent terminations, without accrual of leave benefits.

(Plaintiff's Exhibit E, Tab C, pp.6-7).

There was no written notice or letter following plaintiff's suspension.

As an employee with Headstart, Ms. Coleman received contributions to a pension plan. Metropolitan Life Insurance Company (Metropolitan) managed the pension funds of Headstart

employees and required written notice before they would release those funds to an employees. (Barrett depo., pp.58-60).

On December 21, 1998 plaintiff's attorney sent a second letter to the defendants requesting clarification of Ms. Coleman's employment status and informing Ms. Barrett that plaintiff "cannot withdraw her retirement funds due to the fact that you have not, on the record, terminated her." (Plaintiff's Exhibit B). On September 7, 1999 Barrett sent a letter to Luther Riley of Metropolitan stating that Ms. Coleman's term of employment was from April 3, 1991 through April 7, 1998. (Plaintiff's Exhibit D).[2/] Ms. Coleman received her pension funds in October 1999 including interest through October 1999. (Coleman depo., p.33). This action was filed on April 21, 2000.

Breach of Contract Claim

Plaintiff argues that there was a valid employment contract between plaintiff and defendant and that the contract was breached when plaintiff was wrongfully terminated. In *Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 728 (Ala. 1987), the Alabama Supreme Court recognized that Alabama is an "employment at will" state. The *Hoffman-La Roche* court held:

> [T]hree elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of [a] definite duration, *Bates v. Jim Walter Resources, Inc.*, 418 So.2d 903 (Ala. 1982); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 186 So. 699 (1939); and (3) that the employee provided substantial consideration for the contract separate from the services to

---

[2/] Ms. Barrett testified that the April 7, 1998 date was incorrect. (Barrett depo, p.64). Both Barrett and Coleman testified that Coleman was paid for the months of April and May. (Barrett depo., p.52; Coleman depo., p.60).

6

        be rendered, *United Security Life Ins. Co. v. Gregory*, 281
        Ala. 264, 201 So.2d 853 (1967).

512 So.2d at 728.

  The *Hoffman-La Roche* court further recognized the possibility that an employee handbook may form a contract that converts an at-will employment relationship into one in which the employer's right to terminate employment is limited. The court summarized it holding:

> In summary, ... the language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by [accepting or continuing] employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.

512 So.2d at 735.

  Plaintiff argues that Headstart's right to terminate her employment was limited by the Headstart policies and procedure manual which set out the due process procedures to be followed for suspensions. At most, the manual limited Headstart's right to terminate employment during a school year. Any contract between Ms. Coleman and Headstart could only have been renewable on a yearly basis as Headstart was funded on a year-to-year basis. The mandatory procedures set forth in the policies and procedures manual would apply only to suspensions and terminations occurring during a school year. Ms. Coleman was paid through May 1998 and continued to receive health insurance through the summer of 1998 while drawing unemployment insurance. Ms. Coleman was not called back to work for the 1998-99 school year, she did not report back for work and she did not receive pay or health insurance

benefits for the 1998-99 school year. There was no employment contract in effect after the summer of 1998. The employment contract for the school year 1997-98 had been completed and there was no new contract entered into for the school year 1998-99. Because Ms. Coleman's employment was not terminated during a school year but, rather, simply was not renewed for another school year, there was no breach of contract.

Trespass and Conversion Claim

Defendants argue that Ms. Coleman's state law claims of trespass and conversion are preempted by ERISA.[3/] State laws that "relate to" employee benefit plans are preempted by ERISA. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (fraud, breach of fiduciary duty, and breach of contract related to improper processing of benefit claims preempted). ERISA provides, with certain narrow exceptions, that the rights, regulations and remedies afforded by that statute "supersede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a).

The preemption provision of ERISA is extremely broad. *See e.g. Pilot Life*, 481 U.S. at 45-46; *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983). A state law "'relates to' a benefit plan ... if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96-97. Because Congress used the word "relates to" in its broad sense, the Supreme Court has "emphasized that the preemption clause is not limited to 'state law specifically designed to affect employee benefits plans.'" *Pilot Life*, 481 U.S. at 47-48; *accord Shaw* 463 U.S. at 98 (preemption clause should not "be interpreted to preempt only state law

---

[3/] Plaintiff argues that it is unclear whether the Headstart retirement plan could fall within the "governmental plan" exception to ERISA's preemption provisions. This action was removed to federal court pursuant to ERISA and discovery was completed. Plaintiff has presented no evidence that a governmental plan exception is applicable; therefore, the court will not consider this position.

dealing with the subject matters covered by ERISA – reporting, disclosure, fiduciary responsibility, and the like").

"A party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). The claims for trespass and conversion clearly relate to the ERISA benefit plan because the conduct at issue, failing to notify Metropolitan Life that Ms. Coleman was no longer employed by Headstart, is alleged to be the reason for the refusal to pay benefits at an earlier date.[4/] ERISA precludes the state law claims for trespass and conversion.[5/]

Based on the foregoing, defendants' motion for summary judgment (doc. # 26) is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the ___9th___ day of August, 2004.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

[4/] "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715, , 722 (11th Cir. 1996), *cert. denied*, 519 U.S. 1092 (1997). Although Mrs. Barrett is not an ERISA entity *per se*, ERISA still preempts the state claims against her because "[t]he proper focus is not on the relationship between the parties but on the relationship between the alleged conduct and the refusal to pay benefits." *Garren*, 114 F.3d at 188.

[5/] Plaintiff argues that even if ERISA applies to the tort of conversion and even though plaintiff received her benefits, ERISA provides for further relief in the form of penalties and attorneys' fees. The award of penalties and attorneys' fees is within the trial court's jurisdiction. 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1132(g)(1); *Wright v. Hanna Steel Corp.*, 270 F.3d 1336 (11th Cir. 2001), *rehearing and rehearing en banc denied*, (11th Cir. 2002). Although the parties have not argued the propriety of penalties and attorneys' fees, the court would be reluctant to award either. Neither penalties nor attorneys' fees are appropriate here in light of Headstart's non-profit status which would affect its ability to pay, the apparent lack of culpability or bad faith of defendants, the lack of deterrent value in the imposition of such fees or penalties, the fact that plaintiff would be the only participant or beneficiary to benefit, and the generally weak case of plaintiff